## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARIA JOHNSON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | CASE NO. CV 02-B-3180-S |
| | } | |
| R. JAMES NICHOLSON, | } | |
| Secretary of Veterans Affairs, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is before the court on defendant's Motion for Summary Judgment. (Doc. 15.) Plaintiff Maria Johnson, a Filipino female, is employed as a Staff Nurse with the Veterans' Affairs ("VA") Medical Center in Birmingham, Alabama. (Doc. 1 at 1-2.)[1] She filed this action alleging that the United States Department of Veterans Affairs, through Secretary R. James Nicholson,[2] retaliated against her after she engaged in protected activity, in violation of Title VII of the Civil Rights Act of 1964. (*Id.* at 2-8.) She further alleges that defendant discriminated against her on the basis of her race or ethnic background, also in violation of Title VII. (*Id.* at 8-9.) Upon consideration of the record, the submissions of the

---

[1]    Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]    Effective February 1, 2005, R. James Nicholson was sworn into office as Secretary of Veterans' Affairs. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nicholson is substituted for Anthony J. Principi as the proper defendant in this case.

parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

## I.  FACTUAL SUMMARY

Plaintiff has been employed by defendant at the Birmingham Veterans Administration Medical Center ("BVAMC") since 1983.  (Doc. 16, Ex. 4 at 2.)  On October 8, 1997, plaintiff testified on behalf of a co-employee, Adelaida Baltazar, in an EEO proceeding in which Baltazar alleged national origin discrimination on the basis of her Asian Pacific/Filipino descent against defendant.  (*Id.* at 3.)  She testified again for Baltazar on March 9, 1998.  (*Id.*)  Baltazar named Juan Morales, then the chief patient care officer at BVAMC, (Doc. 16, Ex. 5 at 10), as the primary offender in her case.  Morales is the primary offender named in plaintiff's case as well.

Plaintiff alleges three wrongful acts by defendant.  First, she alleges that Morales penalized her by taking away overtime pay she had already received, in retaliation for her testimony in the EEO proceeding.  (Doc. 1, ¶¶ 20, 23-27.)  Plaintiff further alleges that Morales changed her performance appraisal for the year 1997 from "highly satisfactory" to "satisfactory" in retaliation for the same EEO testimony.  (*Id.* ¶¶ 21, 28-41.)  Finally, plaintiff alleges that, following a reorganization of the staffing of BVAMC, she was not selected to fill one of two Nurse Manager positions because of her EEO testimony and her Asian-Pacific origin.  (*Id.* ¶¶ 22, 42-74.)

**A.     The Removal of Overtime Pay**

Plaintiff earned overtime pay for work performed in September of 1997.  (Doc. 16, Ex. 1 at 17-18.)  Plaintiff obtained the approval of someone other than Morales to perform the work for which she received that overtime pay.  (Doc. 16, Ex. 1 at 17-18; Doc. 16, Ex. 2 at 4.)  It was Morales's policy to only allow overtime pay that he had approved in advance. (Doc. 16, Ex. 8 at 13.)  On October 27, 1997, plaintiff noticed that the overtime pay had been removed from her bank account.  (Doc. 16, Ex. 2 at 4.)  She then spoke to Morales and learned that he had ordered the removal.  During this encounter, Morales told plaintiff that he would return half of the rescinded overtime pay to her.  (Doc. 16, Ex. 1 at 17-18; Doc. 16, Ex. 2 at 4.)  Plaintiff does not claim that he did not follow through on this assurance.

**B.     Plaintiff's Performance Appraisal**

Plaintiff claims that she received an unfair or altered performance appraisal in retaliation for her testimony in the Baltazar case.  (Doc. 16, Ex. 1 at 64-65.)  Plaintiff asserts that, under unspecified VA regulations, her proficiency rating for 1997 was due on January 17, 1998.  (*Id.* at 36-37.)  She further asserts that those regulations require "the director" to provide written reasons for any delay in the evaluation.  (*Id.* at 37.)  However, plaintiff did not receive the result of her evaluation until June 2, 1998, (*Id.* at 53), although Morales had signed the rating form on April 1, 1998, (Doc. 16, Ex. 5 at 24; Doc. 16, Ex. 13).  Furthermore, Morales conceded that he had changed the evaluation of plaintiff's interpersonal relationships from "highly satisfactory" to "satisfactory," (Doc. 16, Ex. 5 at 24;

3

*see also* Doc. 16, Ex. 13), thereby changing her overall rating from "highly satisfactory" to "satisfactory," (Doc. 16, Ex. 5 at 23-24.)

### C.   Defendant's Non-Selection of Plaintiff as a Nurse Manager

In 1997, BVAMC began a restructuring and reorganizing of its nursing areas. (Doc. 16, Ex. 5 at 72-74, 116-17.) Plaintiff's area of service, Ambulatory Care, was the second area to be created in the reorganization. (Doc. 16, Ex. 6 at 3.) At the time of the reorganization, there were four Nurse Managers in the Ambulatory Care Area of the BVAMC. (Doc. 16, Ex. 5 at 75.) Plaintiff was one of the Nurse Managers in this group. (Doc. 16, Ex. 1 at 12.) At some point in 1998, Morales decided that the number of Nurse Managers in Ambulatory Care should be reduced from four to two. (Doc. 16, Ex. 5 at 75.) Three of the Nurse Managers in place at the time of reorganization, including plaintiff, applied for those two spots. (*Id.* at 77-79.) Interviews were conducted on September 22-23, 1998, (Doc. 9 at 6; Doc. 10 at 4; Doc. 11 at 2), by Morales and two other members of the hospital staff, (Doc. 16, Ex. 1 at 57-58.) Out of a possible thirty-nine points, Morales gave plaintiff a score of sixteen on her interview, the lowest score he gave any of the candidates. (Doc. 16, Ex. 11 at 2; *see also* Doc. 16, Ex. 9 at 10; Doc. 16, Ex. 10 at 12.) The other two interviewers also gave plaintiff lower scores than the other two candidates.[3] Morales, as the "final selecting official," (Doc. 16, Ex. 5 at 79), chose the two other nurses, Erma Jackson

---

[3]   Interviewer Dr. Steven Hahn gave the other two candidates perfect scores of thirty-nine while giving plaintiff a thirty-seven, and interviewer Jessie Dickerson gave candidate Ruth Fields a thirty-eight, candidate Erma Jackson a thirty-one, and plaintiff a twenty-four. Morales gave Jackson a thirty-one and Fields a 28.5. (Doc. 16, Exs. 9-11.)

4

and Ruth Fields,[4] to fill the two positions for Nurse Manager that remained after the reorganization.  (Doc. 16, Ex. 5 at 76, 79, 83.)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment bears the initial burden of showing that no genuine issues exist.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *See id.* at 255.  Nevertheless, the nonmovant need not be given the benefit of every inference but

---

[4]        Both Jackson and Fields are African-American.  (Doc. 16, Ex. 1 at 65.)

only of every *reasonable* inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540

n.12 (11th Cir. 1988).

## III.   <u>DISCUSSION</u>

### A.    Governing Law

Plaintiff's discrimination and retaliation claims are subject to the well-established

burden of proof analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).  To establish a prima facie case of discrimination, plaintiff must show: (1) she

belongs to a protected category; (2) she was subject to an adverse job action; (3) the BVAMC

treated similarly situated employees outside plaintiff's classification more favorably; and (4)

plaintiff was qualified to do the job.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)

(citing *McDonnell Douglas*).  To establish a prima facie case of retaliation under Title VII,

plaintiff must prove: (1) she participated in an activity protected by Title VII; (2) she suffered

an adverse personnel action; and (3) there is a causal link between the protected activity and

the adverse employment action.  *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004).

If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate

a legitimate, nondiscriminatory reason for the employment action.  *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Defendant's burden in articulating

a legitimate, nondiscriminatory reason for its actions is "exceedingly light."[5]  *Meeks v.*

---

[5]        The *Burdine* opinion detailed the requirements placed on defendant:

The defendant need not persuade the court that it was actually motivated by
the proffered reasons.  It is sufficient if the defendant's evidence raises a
genuine issue of fact as to whether it discriminated against the plaintiff.  To

*Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). If defendant meets its burden of production, plaintiff must then present "significant[ly] probative" evidence to prove that the articulated reason is merely a pretext for intentional discrimination. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). At this stage, plaintiff's obligation "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

### B.     The Removal of Overtime Pay

Defendant argues that plaintiff cannot prove a prima facie case that Morales's removal of overtime wages that had already been paid to her was unlawful retaliation. (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Br.") at 17.) For purposes of this motion, defendant concedes that plaintiff's EEO testimony was an activity protected by Title VII. (*Id.*) The court will assume, without deciding, that plaintiff's loss of overtime pay was an adverse personnel action. Therefore, the question becomes whether there is sufficient evidence to create a genuine issue of material fact as to the causal connection between plaintiff's testimony and Morales's removal of her overtime pay.

---

accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

450 U.S. at 254-55 (citation and footnotes omitted).

"To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotation marks omitted).  Plaintiff must show that Morales, who made the decision to remove the overtime pay, knew of plaintiff's October 8, 1997, testimony before the EEO when he made that decision.  There is a factual dispute on this issue,[6] so the court will assume for summary judgment purposes that Morales was aware of plaintiff's testimony when he had the overtime pay taken away from plaintiff.  The removal of the pay occurred less than a month after plaintiff's testimony.  Because of this temporal proximity, the court will find for purposes of this motion that plaintiff has established a sufficient causal link to establish a prima facie case of retaliation.

Defendant must now show a legitimate, nondiscriminatory reason for the removal of overtime pay.  Morales states that it was his policy not to give out overtime unless he personally approved it beforehand.  (Doc. 16, Ex. 8 at 13.)  Plaintiff has testified that she received approval from the associate chief of staff, who was Morales's subordinate.  (Doc.

---

[6]        Adelaida Baltazar, for whom plaintiff was testifying before the EEO, states in an affidavit that "in the fall of 1997" she encountered Morales at the BVAMC.  When he asked her what she was doing there, she told him that she was waiting to see plaintiff about plaintiff's EEO testimony for Baltazar.  (Doc. 20, Ex. 2 ¶ 6.)  However, Morales stated at his deposition on March 22, 2004, that he did not know until plaintiff's counsel told him that day that plaintiff had testified for Baltazar.  (Doc. 16, Ex. 5 at 55; *see also* Doc. 16, Ex. 6 at 12.)

From the available evidence, the court cannot determine whether the alleged encounter occurred before or after Morales's removal of the money.  However, for summary judgment purposes, the court will assume Morales knew of plaintiff's testimony before he removed her overtime pay.

16, Ex. 2 at 4.)  She later testified that the work for which she was paid the overtime - but not necessarily the overtime pay itself - was approved by Director Y.C. Parris, (Doc. 16, Ex. 1 at 18), who plaintiff asserts is defendant's highest ranking management official in Birmingham, (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 17). Regardless of which account is correct, plaintiff does not claim that Morales ever approved her overtime pay.  Morales's policy of not allowing overtime pay that he had not personally approved is a legitimate, nondiscriminatory reason for removing plaintiff's overtime pay.[7] Plaintiff has no offered no evidence, other than temporal proximity, to show that defendant's stated reason is pretext.  Because plaintiff's performance of the work for which she received overtime pay was only a few weeks before her EEO testimony, (Doc. 16, Ex. 2 at 4), the temporal proximity of her testimony to Morales's removal of her overtime pay is not significantly probative of retaliatory intent.  *Elrod*, 939 F.2d at 1470.  Defendant has offered a legitimate, nondiscriminatory reason for removing plaintiff's overtime, and plaintiff has not offered sufficient evidence on which a reasonable jury could find that the articulated reason was not pretext for unlawful retaliation.

B.    **Plaintiff's Performance Appraisal**

---

[7]        Even assuming arguendo that Director Parris approved the overtime pay and that it would have been improper for Morales to remove that pay if Director Parris - Morales's superior - had approved it, that impropriety would not establish that Morales's removal of the pay was in retaliation for plaintiff's testimony.

Plaintiff alleges that various circumstances surrounding her performance evaluation for 1997 demonstrate that Morales unlawfully retaliated against her to punish her for her EEO testimony.[8] (Doc. 1 ¶¶ 21, 28-41.)  As defendant points out, plaintiff sets forth no legal arguments in her opposition brief to support this allegation.  (Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1.)  However, the court will consider the evidence currently before it to determine whether there is a genuine issue for trial.

To establish a prima facie case of retaliation, plaintiff must show that she suffered an adverse personnel action.  *Cooper*, 390 F.3d at 740.  The Eleventh Circuit has adopted an objective test to determine whether an employee has suffered an adverse personnel action: a plaintiff alleging retaliation "must demonstrate that a reasonable person in his position would view the . . . action in question as adverse."  *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 (11th Cir. 2003) (quoting *Doe v. DeKalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998)) (alteration in original).  The subjective perspective of a plaintiff is therefore irrelevant.  A personnel action "is not adverse merely because the employee dislikes it or disagrees with it."  *Doe*, 145 F. 3d at 1449 (quoting *Perryman v. West*, 949 F. Supp. 815, 819 (M.D. Ala. 1996)).  Otherwise, "every trivial personnel action that an . . . employee did not like would form the basis of a discrimination suit."  *Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1997)).

---

[8]     Plaintiff does not claim that her ethnic background had any effect on her evaluation. (Doc. 16, Ex. 1 at 65.)

In the present case, plaintiff received her evaluation several months late, and Morales changed the evaluation of her interpersonal relationships from "highly satisfactory" to "satisfactory." These actions do not demonstrate that plaintiff suffered an adverse employment action. A performance appraisal is not an "ultimate employment decision" such as "termination, failure to hire, or demotion," *Stavropoulos v. Fireston*e, 361 F.3d 610, 616 (11th Cir. 2004), and it does not meet a level of substantiality sufficient to form the basis of a retaliation claim in the Eleventh Circuit. *See, e.g.*, *id.* at 616-618; *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation . . . ."); *Wideman v. Wal-Mart Stores*, 141 F.3d 1453, 1456 (11th Cir. 1998) ("[W]e do not doubt that there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause.").

Courts have consistently held that a performance appraisal that does not meet a plaintiff's expectations does not constitute the type of adverse personnel action the Title VII retaliation provisions protect against. Plaintiff states in her complaint that her "satisfactory" evaluation was lower than any other evaluation she had ever received, (Doc. 1 ¶ 39), although she fails to provide even testimonial evidence of her prior evaluations. In *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890 (10th Cir. 1994), the court found that a "meets expectations" evaluation rating, which was lower than previous evaluations, was not an adverse personnel action. 18 F.3d at 896. Likewise, the Circuit Court of Appeals for the District of Columbia in a retaliation decision found that a lower than normal evaluation was

not an adverse personnel action.  *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999).  The

court noted that "[w]hile [plaintiff's] evaluation may have been lower than normal, it was not

adverse in an absolute sense.  The overall 'fully satisfactory' rating is the middle of five

grades . . . ."  *Id.*  Like the plaintiffs in *Meredith* and *Brown*, Johnson received a less-than-

perfect rating, but not a negative one.  Moreover, on the face of plaintiff's appraisal, there

is no indication that the report is adverse.  (Doc. 16, Ex. 13.)  Plaintiff has failed to

demonstrate that a "successful" rating on her performance evaluation is an adverse personnel

action prohibited by the retaliation provisions of Title VII.[9]

### C.     Defendant's Non-Selection of Plaintiff as a Nurse Manager

---

[9]     Even had plaintiff been able to show a prima facie case, the allegation that her
performance evaluation was the result of unlawful retaliation would still be appropriately dismissed
on defendant's motion for summary judgment.  Defendant would need to show only that Morales's
evaluation of plaintiff was made in good faith, not that it was correct.  *Moore v. Sears, Roebuck &
Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982).  The courts do not lightly interfere with or evaluate
such subjective assessments.  *See Elrod*, 939 F.2d at 1470 ("Federal courts 'do not sit as a super-
personnel department that reexamines an entity's business decision.'" (quoting *Mechnig v. Sears,
Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988))), *cited in Cooper*, 390 F.3d at 730.

        In this case, Morales put forth legitimate reasons for rating plaintiff "successful" rather than
"highly successful."  He believed that plaintiff had interpersonal relationship issues that justified that
rating.  He testified that, "based on the documentation and my interactions in dealing with the
overall management of the service and how I viewed Ms. Johnson's performance, I did not feel that
her rating was at highly satisfactory."  (Doc. 16, Ex. 5 at 33.)  Plaintiff has presented no evidence
that would render Morales's explanation unworthy of credence; she merely indicates that she
disagrees with the rating.  But plaintiff's opinion alone cannot show pretext; plaintiff may not
"substitute [her] business judgment for that of the employer."  *Chapman v. AI Transport*, 229 F.3d
1012, 1030 (11th Cir. 2000).  Therefore, even had plaintiff succeeded in showing a prima facie case
that her evaluation was the result of retaliation, she would not have sufficient evidence that
defendant's explanation was pretextual.

Plaintiff alleges that she lost her position at BVAMC as a Nurse Manager because Morales retaliated against her for her EEO testimony, (Doc. 1 ¶¶ 22, 42-62), and because Morales discriminated against her on the basis of her national origin, (*Id.* ¶¶ 63-74).  For purposes of this motion, defendant concedes that plaintiff is able to establish a prima facie case of national origin discrimination.   (Def.'s Br. at 8.)   Furthermore, defendant acknowledges that plaintiff has satisfied the first two elements of a prima facie case of retaliation: that she participated in a protected activity and that she suffered an adverse personnel action with regard to the non-selection claim.  (*Id.*)  However, defendant disputes that plaintiff has demonstrated a causal link between the protected activity and the adverse action.  (*Id.*)

Because defendant has conceded two elements of retaliation, the question becomes whether there is a genuine issue of material fact as to the causal connection between plaintiff's EEO testimony and her non-selection as a Nurse Manager during the BVAMC reorganization.  Defendant relies on Morales's testimony that he was unaware of plaintiff's EEO testimony to show the virtual impossibility of any causal link.  However, as the court noted *supra*, plaintiff disputes whether Morales knew about her testimony, so the court will assume for this motion that Morales was aware of it.  With this assumption, the court finds that there is sufficient evidence at this stage to support a prima facie case for retaliation in plaintiff's non-selection.

Therefore, plaintiff has shown a prima facie case for both national origin discrimination and retaliation in defendant's failure to select her to be a Nurse Manager.  The

13

burden now shifts to defendant to articulate a legitimate, nondiscriminatory and nonretaliatory reason for not selecting plaintiff to fill a Nurse Manager position. *Burdine*, 450 U.S. at 254.

Ruth Fields was chosen to be the Nurse Manager for the ambulatory surgery facility, observation unit, and specialty clinics, for which she had specifically applied. (Doc. 16, Ex. 5 at 90; Doc. 16, Ex. 10 at 1.) Erma Jackson was selected as the Nurse Manager for primary care, emergency room, and the blind rehabilitative clinic, the position for which she had specifically applied.[10] (Doc. 16, Ex. 5 at 90; Doc. 16, Ex. 9 at 1.) Morales testified that the selection of the two Nurse Managers was based upon the candidates' interview scores, education, and experience. (Doc. 16, Ex. 5 at 81, 83). The court will now consider defendant's proffered reasons for selecting the other two candidates based on these categories.

<u>INTERVIEW SCORES</u>

The interview of the candidates for both positions was done by a panel consisting of Jessie Dickerson, Dr. Steven Hahn, and Morales. Responses to interview questions are a legitimate basis upon which the selecting official may base his selection. *See Chapman v.*

---

[10]     Although plaintiff testified that she applied for both available Nurse Manager positions, (Doc. 16, Ex. 1 at 56), her actual application shows that she was applying only for the position of Nurse Manager for primary care, emergency room, and blind rehabilitative care, (Doc. 11 at 1). Because defendant has not argued that this is significant, the court will assume for summary judgment purposes that plaintiff could demonstrate that she was considered for both positions.

*AI Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000).  The court has already noted that each interviewer gave plaintiff a lower rating than he or she gave to either of the other candidates.

EDUCATION

Morales has also testified that another reason that the other two candidates were chosen was that they each had a master's degree in Nursing.  (Doc. 16, Ex. 5 at 91-92; *see also* Doc. 9 at 3; Doc. 10 at 3.)  Plaintiff does not have a master's degree, and Morales testified that the different levels of education weighed against plaintiff during the decisionmaking process.  (Doc. 16, Ex. 5 at 91-92; *see also* Doc. 16, Ex. 1 at 68-69.)

EXPERIENCE

Morales testified that both plaintiff and Fields had similar relevant experience.  (Doc. 16, Ex. 5 at 92.)  However, Fields's certification in nursing administration was a factor in her favor.  (*Id.* at 92, 94.)  Fields had been managing the Ambulatory Surgery and Observation area for a "long time," and had significant interaction with patients from the specialty clinics.  (Doc. 16, Ex. 8 at 7.)  This experience, Morales testified, was a positive influence on the decision to select her to fill the new position of Nurse Manager for the new ambulatory surgery facility, observation unit, and specialty clinics.  (*Id.*)  He stated that Fields was a "proven leader" who was effective in her dealings with management issues and in her interpersonal relationships.  (*Id.* at 7-8.)  In regards to the other available Nurse Manager position, Morales stated that plaintiff had experience in primary care, but had very little if any experience in the emergency room and no experience in blind rehabilitation.  (*Id.* at 5.)

15

He further testified that Jackson, who was selected for the position, had ER experience, which he said was crucial to the position.

Defendant need only offer admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason for not hiring plaintiff. *Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985). Defendant has done so in this case; the articulated reasons discussed above provide sufficient evidence of legitimate, nondiscriminatory and nonretaliatory reasons for selecting the other two candidates rather than plaintiff. Therefore, since defendant has succeeded in carrying its intermediate burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Plaintiff must now demonstrate a sufficient level of evidence to raise a genuine issue of material fact to survive summary judgment. *Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1579 (N.D. Ala. 1996).

Plaintiff properly attempts to rebut defendant's proffered reasons for her non-selection. *See Chapman*, 229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.") In response to defendant's assertion that the interview scores were a legitimate reason for its decision, she alleges that Morales, by giving plaintiff a low score, had already preselected the other candidates. This allegation is merely conclusory and therefore inadequate to raise an inference of pretext and thereby carry her burden on summary judgment. *See, e.g.*,

16

*Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000). The fact that all three interviewers, two of whom plaintiff affirmatively says were free of any discriminatory or retaliatory intent, (Doc. 16, Ex. 1 at 62), gave plaintiff lower scores than the other two candidates strongly supports a finding that the interview scores were not a pretext for discrimination or retaliation. Furthermore, Morales gave all the candidates their lowest score out of the three scores, so the evidence suggests that he was merely a tougher grader than the other two interviewers.[11]  Finally, even assuming that Morales had preselected the other candidates, that does not show that his reasons for not selecting plaintiff are unworthy of credence. *See Mackey v. Shalala*, 360 F.3d 463, 468-69 (4th Cir. 2004); *Jordan v. Summers*, 205 F.3d 337, 343-44 (7th Cir. 2000); *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986).

In response to defendant's assertion that plaintiff's lack of a master's degree was a contributing factor to the other candidates being selected, plaintiff has presented evidence that other nurses in similar positions at BVAMC do not have master's degrees, and that in the past some applicants with master's degrees were passed over for applicants without master's degrees. (Doc. 20, Exs. 3-4.) This evidence is not enough to overcome plaintiff's burden. Plaintiff was compared not with past applicants, but only to the two applicants competing with her for the two available Nurse Manager positions. Furthermore, defendant

---

[11]     Both Morales and Dickerson gave Jackson a score of thirty-one. However, Morales's score of 28.5 for Fields was 9.5 points lower than her second lowest score, while his score of sixteen for plaintiff was only eight points lower than her second lowest score. (Doc. 16, Exs. 9-11.)

was free to hire any qualified applicant for the new positions; how it chooses to credit an applicant's master's degree, or lack thereof, is not for the court to review.  As stated in a footnote above, "[f]ederal courts do not sit as a super-personnel board that reexamines an entity's business decisions."  *Elrod*, 939 F.2d at 1470 (internal quotation marks omitted). Plaintiff has failed to produce sufficient evidence that plaintiff's lack of a master's degree was merely a pretext for discrimination or retaliation by defendant in its selection of the other two candidates.

Finally, while plaintiff notes her own experience as a Nurse Manager at BVAMC, she fails to acknowledge that the other two candidates had similar levels of experience.  The experience of the candidates is not nearly so distinctive as to make their selection objectively unreasonable.  Therefore, the experience levels of the candidates cannot show that defendant's articulation of that experience as a factor in its decision was pretextual.

Plaintiff asserts that she has produced direct evidence of discrimination based on plaintiff's national origin. (Pl.'s Opp'n at 14.) However, her only potential evidence of such discrimination is her allegation that Morales, in the presence of plaintiff and other employees, once stated that "Orientals don't look at you in the eye when they talk to you."[12] (Doc. 16, Ex. 1 at 51.)  Other than that alleged comment, she has no evidence of discrimination other than her "gut feeling" that Morales does not like Filipino individuals.  (*Id.* at 62-64.)  This

---

[12]     Plaintiff's counsel asserted in his opposition brief that it was undisputed that Morales made this statement.  (Pl.'s Opp'n at 2.)  However, in his deposition Morales denied making any comments concerning "Orientals and eye contact," (Doc. 16, Ex. 5 at 134-35), and defendant has not conceded that any such comment was made.  Therefore, this statement should not have been listed as an undisputed fact.

18

evidence is insufficient to create a genuine issue of fact on the question of whether defendant's proffered reasons for selecting the two candidates other than plaintiff were unworthy of credence and that the real reason was discrimination based on plaintiff's national origin.  Plaintiff must prove that discrimination or retaliation was the true reason for defendant's employment decisions, *St. Mary's Honor Ctr.*, 509 U.S. at 507-08, and the evidence she has produced fails to establish a genuine issue for trial.

Plaintiff has not presented evidence on which a reasonable jury could find that defendant's articulated reasons for the challenged "adverse" personnel decisions are pretext for unlawful retaliation or discrimination.  Therefore, defendant is entitled to judgment as a matter of law on plaintiff's claims.

## IV.  CONCLUSION

For the reasons stated herein, defendant's Motion for Summary Judgment will be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this the 31st day of March, 2005.


_____

_____
**SHARON  LOVELACE  BLACKBURN**
**UNITED STATES DISTRICT JUDGE**

19